THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TONY WILLIAMS, Defendant-Appellant.

First District (5th Division)   No. 1—88—0597

Opinion filed November 8, 1991.

6

Randolph N. Stone, Public Defender, of Chicago (Edwin A. Burnette, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Christine Perille and Kathleen Howlett, Special Assistant State's Attorneys, and Renee Goldfarb, Assistant State's Attorney, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Defendant, Tony Williams (Williams), was charged by indictment with the murder of Jennifer Higgenbottom. Following a jury trial, Williams was found guilty of murder. Subsequently, defendant was sentenced to 40 years in the Illinois Department of Corrections. This timely appeal followed.

On appeal Williams raises the following issues for review: (1) whether the trial court erred in admitting identification testimony when defendant did not have counsel at a preindictment lineup; (2) whether the trial court erred in allowing the State to question the jury pursuant to *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770; and (3) whether the jury was properly instructed on felony murder where defendant was not indicted for armed robbery.

The evidence presented at trial indicated that the following events took place.

On November 5, 1985, Jennifer Higgenbottom (Jennifer) lived with her mother, brothers and sisters at 11914 South Lafayette. She had been living with Derrick Smith up until two days earlier. At approximately 9 o'clock in the evening on November 5, Derrick Smith (Smith) arrived at the Higgenbottom residence and asked to speak with Jennifer. Jennifer's brother, Derrick Higgenbottom, told Smith that she was not home since he knew she didn't want to speak to him. Smith talked to Herman Higgenbottom about getting a television set

that he, Smith, claimed belonged to him. Smith maintained the television set had been removed by Jennifer. Herman didn't know anything about a television set. The two men argued, and Smith told Herman that he would return with "some guys" and take the television.

Smith left the Higgenbottom residence but returned about a half an hour later. He was accompanied by the defendant, who was carrying a sawed-off shotgun at his side. Both Herman and Derrick Higgenbottom saw defendant get out of Derrick Smith's car and walk up to their porch. Smith told Herman that he wanted his television set. During the argument Jennifer came to the door. She told Smith to get off her mother's porch. Jennifer left the door to call the police. Shortly she returned with Michelle Warren. Bonita and Darren Higgenbottom, another sister and brother of Jennifer's, also saw defendant through the window. Darren also saw the gun in defendant's hand. The witnesses were able to see defendant's face since there were lights on inside the house and there was a streetlight on across the street.

The argument continued, and Derrick Smith and defendant said something to each other. Herman was unable to hear what was said since there was so much noise. Defendant then raised his gun and shot through the window of the storm door. Defendant's bullet hit Jennifer in the face and she fell to the floor. Jennifer died as a result of the injuries sustained by the shot fired at her. Both Herman and Darren saw defendant and Smith run off the porch and get into Smith's car.

Detective Maslanda arrived at the Higgenbottom home at approximately 10 p.m. to talk with the witnesses. He spoke with them and then began looking for Derrick Smith. The next day the detective went back to the Higgenbottom home and showed an array of pictures to the members of Jennifer's family. Bonita, Derrick and Herman Higgenbottom viewed the photo array separately. Each person positively identified the defendant as the person he or she saw on the porch with the shotgun. On November 7, 1985, Smith was arrested and a warrant for defendant's arrest was issued.

On December 13, 1986, defendant was arrested. Detective Pedersen conducted a lineup and had Jennifer's brothers and sisters view it. The Higgenbottoms each viewed the lineup separately. The five members of Jennifer's family identified defendant in the lineup. The lineup was conducted without benefit of counsel for Williams.

At trial the State elected to try this as a capital case. This election was premised upon the murder occurring during the commission of a forcible felony. After the jury returned a guilty verdict on the

murder charge, the defendant elected to waive a jury for the death penalty proceedings. The State asserted that the murder was committed during the course of committing or attempting to commit an armed robbery. The State argued that defendant was armed and present with Smith when he demanded the television. Defendant also had stated that he wanted his brother's property. The State's position was that since defendant was demanding this property while armed with a shotgun, this murder occurred during an attempted armed robbery. Nevertheless, during the death penalty proceedings, the trial judge found that the crime of attempted armed robbery was not proven beyond a reasonable doubt so that the statutory factor did not exist. Defendant was sentenced to 40 years with the Illinois Department of Corrections.

We find no procedural and/or substantive errors in the case, and accordingly, we affirm the conviction and sentence imposed by the trial court.

I

First Williams argues that although he was advised of his fifth amendment rights there was never advice tendered as to his sixth amendment right to counsel. He maintains that the failure to tender these rights or warnings, and the concomitant failure to secure a waiver, violated Williams' sixth amendment rights, where a lineup was conducted without benefit of counsel. Williams claims that his sixth amendment right to counsel was violated by not providing him with counsel at the time the lineup was conducted. This contention is totally without merit.

The lineup occurred after an arrest on an unrelated charge, 13 months after Jennifer's murder. Detective Pedersen discovered the outstanding warrant for murder which had been obtained by the police more than one year earlier. Williams was advised of his *Miranda* rights. He was also informed of the outstanding warrant. Williams agreed to talk to the police officers and participate in a lineup. Williams testified that the police advised him that he had a right to an attorney during questioning but that he had never been informed that he had a right to an attorney during the lineup. Williams never asked for an attorney nor did he state that he did not want to participate in the lineup.

The constitutional right to counsel is guaranteed at the time adversary proceedings are initiated, not during the fact-finding process. The right to counsel attaches with the initiation of adversary proceedings against a defendant and that may occur by formal charge, pre-

liminary hearing, indictment, information or arraignment. (*People v. Hayes* (1990), 139 Ill. 2d 89, 123, 564 N.E.2d 803; *People v. Wilson* (1987), 116 Ill. 2d 29, 50, 506 N.E.2d 571, 580.) The sixth amendment's right to counsel guarantee assures that the accused receives the assistance of counsel when confronted with "the intricacies of the law and the advocacy of the public prosecutor" at trial. (*United States v. Ash* (1973), 413 U.S. 300, 309, 37 L. Ed. 2d 619, 626, 93 S. Ct. 2568, 2573.) It also insures that the defendant receives the assistance of counsel at certain "critical" preindictment proceedings, where the accused is confronted by the procedural system, an expert adversary or both, and where the results of the confrontation might determine the defendant's fate and make the trial itself a mere formality. (*United States v. Ash* (1973), 413 U.S. 300, 309, 37 L. Ed. 2d 619, 626, 93 S. Ct. 2568, 2573; *Kirby v. Illinois* (1972), 406 U.S. 682, 689, 32 L. Ed. 2d 411, 418, 92 S. Ct. 1877, 1882; *People v. Hayes* (1990), 139 Ill. 2d 89, 123, 564 N.E.2d 803.) It has not been held that an arrest by itself triggers the right to counsel. (*Wilson*, 116 Ill. 2d at 50, 506 N.E.2d at 580, citing *United States v. Gouveia* (1984), 467 U.S. 180, 189-90, 81 L. Ed. 2d 146, 155-56, 104 S. Ct. 2292, 2298-99.) In *People v. Wilson* (1987), 116 Ill. 2d 29, 50-51, 506 N.E.2d 571, 580, the Illinois Supreme Court declined to find that adversary proceedings were initiated when a police officer presented a complaint to a judge and an arrest warrant was issued.

At the pretrial motion to suppress, Detective Edmund Leracz testified that the arrest warrant for Williams was issued by the police department and that it was not until after a lineup was conducted that the State's Attorney's office was contacted. In *People v. Hayes*, the Illinois Supreme Court stated that *People v. Owens* (1984), 102 Ill. 2d 88, 464 N.E.2d 261, *People v. Thompkins* (1988), 121 Ill. 2d 401, 521 N.E.2d 38, and *People v. Wilson* (1987), 116 Ill. 2d 29, 506 N.E.2d 571, demonstrate that in determining whether an accused's sixth amendment right to counsel attaches upon the filing of a criminal complaint, the court must consider the degree to which the State's prosecutorial forces have focused upon the accused. (*Hayes*, 139 Ill. 2d at 125.) In *Hayes* the prosecutor reviewed the criminal complaint against the defendant before it was filed in the circuit court. The court stated that "[t]he prosecutor's involvement in the procurement of the warrant, however, was not significant and did not signal a commitment by the State to prosecute the defendant." (139 Ill. 2d at 125-26.) The complaint for preliminary examination had been presented by a police officer, not an assistant State's Attorney. The *Hayes* court went on to say "[t]he fact that a warrant was obtained

prior to the defendant's arrest was not sufficient to create trial-like confrontation contemplated by the sixth amendment." *Hayes*, 139 Ill. 2d at 126.

The arrest warrant was obtained by police officers, and the State's Attorney's office was only contacted after the defendant's lineup. Moreover, no formal charge, preliminary hearing, indictment, information or arraignment occurred until after defendant's identification in the lineup. At the time of the lineup the prosecutorial involvement was minimal; thus, for the reasons set forth above, we find that there was no violation of defendant's right to counsel.

Further, we note that Williams admits that "lineups conducted before indictment or some formal judiciary proceeding do not trigger the right to counsel," but suggests an exception in this case because Williams "had, to all but the disengenuious [*sic*], become the accused." We disagree with defendant's argument, and in this era of senseless killings and rising crime rate, we find no reason to create an exception to the aforecited rule.

## II

Twelve prospective jurors were excused for cause because they were not acceptable under the rule in *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770. "Witherspoon" is a word that cannot as yet be found in Webster's various dictionaries. It is also a word unknown to the common law. It found its origin in the case of *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770. To "Witherspoon" has become known as questioning a jury about its feelings regarding the death penalty.

Williams argues that the excusal of the jurors, which the defense found to be acceptable, deprived him of his right to a fair trial. He maintains that failure to grant a mistrial, as requested by the defense, further compounded the error. The defendant argues that *Witherspoon*-qualified juries are conviction prone and that the dismissal of satisfactory prospective jurors, but for their feelings toward the death penalty, was error. Defense counsel concludes argument on this issue by stating, "[e]ven if the normal qualifying of jurors in a death penalty case, pursuant to *Witherspoon*, is not violative of a fair trial, certainly the ruse of death eligibility, for the purpose of eliminating otherwise capable (not to mention favorable to the defense) prospective jurors deprived Mr. Williams of a fair trial."

■ Both the United States Supreme Court and the Illinois Supreme Court have found that a jury questioned regarding the death penalty is presumed to be a fair jury on the question of guilt or innocence. (*Lockhart v. McCree* (1986), 476 U.S. 162, 90 L. Ed. 2d 137, 106 S. Ct. 1758; *People v. Shum* (1987), 117 Ill. 2d 317, 512 N.E.2d 1183.) Thus, we find that defendant's argument that *Witherspoon* juries are conviction prone lacks merit. A trial court which is qualifying a jury pursuant to *Witherspoon* is in the best position to determine whether a prospective juror would be fair and, as such, deference must be paid to the trial judge who sees and hears the veniremen. (*People v. Morgan* (1991), 142 Ill. 2d 410, 437-38, 568 N.E.2d 755.) The defendant does not address this argument in terms of the dismissal of any particular juror. The defendant's argument consisted only of general conclusory statements. After a careful review of the record, we find no evidence to support defendant's argument that the jury was conviction prone.

■ Finally, the issue of the death penalty, contrary to the argument of the defendant, was properly pursued. The thrust of the State's case was that Jennifer's murder had been effected during an armed robbery. Defense counsel was aware prior to the *voir dire* process that the State was seeking the death penalty in this case. However, it was not until the second day of jury selection that defense counsel objected to the questions concerning the death penalty. Defense counsel requested a mistrial, or in the alternative, a dismissal of the jurors that had already been selected since the felony of armed robbery was not part of the indictment. The trial judge denied the motion for a mistrial and continued the *voir dire* questioning pursuant to *Witherspoon.*

"The erroneous exclusion of a prospective juror because of the person's views regarding capital punishment, though it will not vitiate the jury's determination of guilt, will necessitate a new sentencing hearing." (*People v. Seuffer* (1991), 144 Ill. 2d 482, 508, citing *Witherspoon v. Illinois* (1968), 391 U.S. 510, 522, 20 L. Ed. 2d 776, 785, 88 S. Ct. 1770, 1777.) The Illinois Supreme Court in *People v. Albanese* (1984), 104 Ill. 2d 504, 524, 473 N.E.2d 1246, 1254, reaffirmed the *Witherspoon* questioning but found that the defendant's argument concerning the jury's impartiality to be irrelevant since the trial judge, rather than the jury, made the sentencing decision.

Since Williams waived a jury for the death penalty proceedings in this case, the jury was never asked to determine Williams' sentence. We do not believe that the trial judge erred in disqualifying any jurors pursuant to *Witherspoon* questioning; however, even if

any error existed, the argument is irrelevant due to the fact that the trial judge rather than the jury made the sentencing decision.

We find nothing in the record or the defendant's argument to support his allegations that the jury was conviction prone nor do we find any support for the allegation that Williams was denied his right to a fair trial. Furthermore, we do not believe the trial judge erred in refusing to grant a mistrial.

### III

Williams argues that instruction on attempted armed robbery, as the basis for felony-murder accountability in this case, was unwarranted, confusing and error, especially when considering the later finding of ineligibility.

The jury was given Illinois Pattern Jury Instructions, Criminal, No. 7.01 (2d ed. 1981), which states:

> "A person commits *** murder when he kills an individual without lawful justification if, in performing the acts which cause death,
>
> * * *
>
> he is attempting to commit the offense of armed robbery."

Williams was not indicted for armed robbery nor was he convicted of the same. Defense counsel objected to the instruction on the basis that defendant was not charged with the offense of armed robbery. After arguments for the State, the trial judge ruled that the instruction would be given over defendant's objection.

■ As a general proposition of law, both the State and the defendant are entitled to instructions which present their respective theories, even though they are supported by slight evidence. (*People v. Williams* (1983), 115 Ill. App. 3d 276, 450 N.E.2d 851.) The State's theory of the case was based on its original contention that Williams killed Jennifer while attempting to commit the armed robbery of a television set.

Supporting the State's theory were four witnesses who saw the defendant on the porch with a sawed-off shotgun. At the time, defendant was with Smith and Smith was demanding a television set. Williams told Herman Higgenbottom "he wanted his brother's s---." When the victim came back from calling the police, Williams shot her. This evidence justified the instruction, despite the fact that at the death penalty portion of the trial the trial judge determined that armed robbery was not proven beyond a reasonable doubt. Had the defendant been misled in his defense or exposed to double jeopardy, giving the instruction would have been error.

In *People v. Allen* (1974), 56 Ill. 2d 536, 543, 309 N.E.2d 544, the jury was given an instruction on felony murder even though the defendant was indicted for murder and not felony murder. The *Allen* court quoted the following from *People v. Rosochacki* (1969), 41 Ill. 2d 483, 492, 244 N.E.2d 136:

"We find that the defendant here was charged with murder and convicted of that crime, and even if a variance did exist between the type of murder charged in the indictment and the types described in the instructions, it would not vitiate the conviction unless it was of such a character as to mislead the defendant in his defense or expose him to double jeopardy. [Citations.] There is no evidence in this case whatsoever that the defendant was misled in his defense, nor did counsel at any time during the proceedings request additional time, allege surprise, or claim that it was impossible for him to prepare a defense to the proof being offered against him."

Williams was notified prior to trial that the State would be proceeding under the felony-murder theory. Defense counsel did not allege surprise nor did he ask for a continuance for the purpose of preparing a defense to this charge. Nothing in the record indicates either that Williams was misled or that he was exposed to double jeopardy. Accordingly, we do not believe that the trial court erred in giving the instruction.

For all of the above reasons, we affirm the conviction and sentence imposed by the trial court.

Judgment affirmed.

LORENZ, P.J., and McNULTY, J., concur.