59 F.3d 173
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Robert E. DRISCOLL, Defendant-Appellant.
 No. 94-3591.
 United States Court of Appeals, Seventh Circuit.
 Argued March 27, 1995.
Decided June 20, 1995.
 
 1
 Before CUMMINGS and FLAUM, Circuit Judges, and WALTER, District Judge*.
 
 ORDER
 
 2
 A jury found the defendant guilty of possessing and transporting child pornography in violation of 18 U.S.C. Sec. 2252. Defendant appeals his conviction claiming entrapment and a violation of his Sixth Amendment right to counsel based on his meeting with an undercover government agent after the filing of a criminal complaint and the issuance of an arrest warrant. Finding both claims meritless, we affirm his conviction.
 
 Background
 
 3
 Defendant answered an advertisement for "Hard to find ... kinky and unique" videos in the back of the Chicago Reader. The advertisement had been placed by the Child Exploitation Strike Force, a multi-agency unit made up of local and federal law enforcement. Detective Robert Farley of the Cook County Sheriff's department answered defendant's inquiry with a letter and "customer checklist" listing various flavors of pornography. Defendant returned the checklist indicating that he was "very interested" in "Teen Sex," "Pre-teen Sex," and "Animal Encounters." Farley wrote back to the defendant giving him the name and address of Robert Hugh, the fictitious local contact specializing in "youth erotic material."
 
 
 4
 Defendant proceeded to correspond with "Robert Hughs," i.e., Detective Farley in his undercover capacity. When his first letter to Hughs was not answered, defendant wrote back expressing his desire to acquire and trade "family fun," "youth development" and "in particular pre-teen family fun" material and included his phone number. After numerous letters and telephone messages, Farley as Hughs sent defendant a price list and graphic descriptions of four movies and five photo sets, all containing explicit child pornography. In an accompanying letter, Farley explained that the prices were based on defendant not having anything to trade and that he was interested in trading if possible. The letter also warned the defendant to be discreet and to "please destroy this list and forget we ever talked" if he was not interested.
 
 
 5
 In a later telephone conversation, defendant told Farley that he wanted all the videos on the list and that he would copy his own videos for Farley. Defendant explained that he would send the tape and a magazine to Farley and that he would put them in a box filled with newspapers to throw off postal inspectors. Defendant also told Farley that he was negotiating with a prostitute to gain access to an eight-year-old girl.
 
 
 6
 On September 14, 1993, Farley received the defendant's package containing a magazine and videotape. On the tape were three short movies depicting children ages six to twelve engaging in explicit sexual acts. On September 27, 1993, defendant called Farley and told him that he wanted to meet the next day to exchange materials at a Mcdonald's Restaurant in Palos Hills. The next morning defendant again called Farley to confirm the meeting. The two agreed to meet between 6:00 and 6:30 that evening.
 
 
 7
 Prior to the meeting, Postal Inspector Robert Williams sought approval from the United States Attorney's office to seek an arrest warrant and search warrant for the defendant's residence. At about 1:00 p.m., Magistrate Judge Guzman signed a criminal complaint charging the defendant with transporting child pornography by mail on September 11, 1993--the date defendant shipped his package to Farley--and approved arrest and search warrants.
 
 
 8
 During the McDonald's meeting, defendant gave Farley additional videotapes containing child pornography. In exchange Farley gave the defendant one videotape and five photo sets. After the exchange of material, defendant asked Farley whether he knew of any girls for sale. Defendant told Farley that several years ago while vacationing in Canada he had sex with a twelve-year-old girl. Defendant also mentioned the eight-year-old girl the two had discussed before.
 
 
 9
 Defendant was arrested at the end of the meeting. Defendant after waiving his Miranda rights admitted that he supplied Farley with child pornography and that he knew that possession of child pornography was illegal. Defendant consented to a search of his residence. Police recovered two European-formatted videotapes containing child pornography.
 
 
 10
 On October 28, 1993, the grand jury indicted defendant for knowingly transporting and shipping child pornography by mail on September 11, 1993 (Count One), and knowingly possessing child pornography on September 28, 1993 (Count Two), in violation of 18 U.S.C. Sec. 2252. Before trial, defendant moved to suppress the recording of the McDonald's meeting, his subsequent statement, and the evidence obtained during the search of his home. Defendant argued that because the McDonald's meeting occurred after the government filed a criminal complaint, it violated his Sixth Amendment right to counsel. The district court denied the motion and on January 19, 1994, a jury found the defendant guilty on both counts. On August 18, 1994, the district court sentenced defendant to serve thirty months' imprisonment, and three years' supervised release.
 
 Discussion
 
 11
 On appeal, defendant continues to press his Sixth Amendment argument and claims that the evidence was insufficient for the jury to find that he was not entrapped.
 
 1. Sixth Amendment right to counsel
 
 12
 "[T]he right to counsel exists to protect the accused during trial-type confrontations with the prosecutor." United States v. Gouveia, 467 U.S. 180, 190. The right does not attach until the initiation of adversary proceedings. Id. at 188-189. The filing of a criminal complaint or the issuance of an arrest warrant does not constitute the initiation of adversary proceedings under federal law and therefore does not trigger the right to counsel. Id. at 190 ("we have never held that the right to counsel attaches at the time of arrest"); United States v. Langley, 848 F.2d 152, 153 (11th Cir.), certiorari denied, 488 U.S. 897 (1988); United States v. Pace, 833 F.2d 1307, 1311-12 (9th Cir. 1987), certiorari denied, 486 U.S. 1011 (1988); United States v. Duvall, 537 F.2d 15 (2d Cir.), certiorari denied, 426 U.S. 950 (1976). To hold that the right of counsel attaches with the filing of a complaint would only discourage officers from seeking arrest warrants. Duvall, 537 F.2d at 22.
 
 
 13
 Even if the right of counsel had attached, the meeting at McDonald's arranged by defendant to exchange child pornography was not a "critical stage" of judicial proceedings. It was a crime. The purpose of the Sixth Amendment right to counsel is to assure aid at trial. It does not grant defendant the right to legal advice in the commission, concealment or avoidance of future crimes. Moreover, defendant did not need legal advice. He knew what he was doing was a crime and repeatedly questioned Farley to insure that he was not "a cop."
 
 2. Evidence of non-entrapment
 
 14
 Defendant does not dispute that he possessed child pornography but claims that he was entrapped into transferring it through the mail. The jury was instructed on the entrapment defense but rejected it. The evidence was more than sufficient to support the jury's finding. Defendant showed no reluctance to trade material through the mail, admitted mailing material in the past, and described how best to do it to avoid detection.
 
 
 15
 AFFIRMED.
 
 
 
 *
 The Honorable Donald E. Walter of the Western District of Louisiana is sitting by designation