THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE GARRETT, Defendant-Appellant.

First District (4th Division)    No. 1—93—0479

Opinion filed September 19, 1996.

512

HOFFMAN, P.J., dissenting.

Joan A. Hill-McClain, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Margaret J. Faustmann, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAHILL delivered the opinion of the court:

A jury found the defendant, George Garrett, guilty of first degree murder and attempted first degree murder. The court sentenced him to 60 years' imprisonment for first degree murder and a concurrent sentence of 25 years for attempted murder. Defendant appeals. His main argument is that he was denied his sixth amendment right to counsel when, unrepresented, he was placed in a lineup while in custody. We affirm.

The evidence revealed that at 1:30 a.m. on September 1, 1990, Darrell Gurley and his uncle, Thomas Peters, drove to the Belmonte liquor store in Chicago to purchase beer. Gurley testified that Peters parked his vehicle near the liquor store and they got out. Gurley saw a group of men playing dice nearby. Peters approached the men, and Gurley went to buy beer.

Gurley bought beer, carried it to the vehicle, and then joined Peters, who had begun playing dice with the group of men on the street. Peters finished gambling a few minutes later, and they left. As they were walking to their vehicle, Gurley heard a male voice say "Yo." He turned and saw two men he recognized from the neighborhood. He knew defendant, George Garrett, as "Poncho" and codefendant, Antoine Day, as "Twon." Gurley saw both men display guns—Garrett had a silver .357 magnum, Day a black .357 magnum.

Gurley yelled "[W]atch out!" to warn Peters. Both men ran. Gurley heard gunfire. He looked back and saw everyone running except Garrett and Day. Gurley saw Garrett aim the gun at him and saw Day shoot at Peters. Gurley continued to run until he reached the house of his cousin's girlfriend. Gurley later left the house and went home. There he was told that Peters had been shot. The next morning he learned Peters died. Gurley then called the police.

Chicago police detective Hugh Conwell responded and brought Gurley to the police station. Gurley told Detective Conwell what happened at the liquor store and named the assailants. He described Garrett as a black male, 6 feet 1 inch tall, weighing 200 to 225 pounds, and Day as a bowlegged black male, 6 feet tall, weighing 180 pounds.

Gurley testified that he was called to the station twice. On September 4, 1990, he viewed a lineup and identified Day as one of the shooters. On September 10, 1990, he was shown a photo array and identified Garrett as one of the shooters.

Kenneth Jamison testified that he and a friend were driving northbound on Laramie Avenue at 1:30 a.m. on September 1, 1990. He heard gunshots and saw people running. When he reached the intersection of Laramie and Lake Streets, he saw Peters stumble into the street and fall down. Jamison's passenger, Dwayne Jones, left the car to aid Peters.

As Jones approached, Peters got up and asked to be taken to the hospital. Jones helped Peters into the car, and Jamison drove him to Loretto Hospital, where he was admitted.

James Coleman testified that at 12:30 a.m. on September 1, 1990, he and a friend went to the Belmonte liquor store. Coleman saw 15 people playing dice near the store. Coleman watched the group for a while and then went into the store to buy beer. He returned to the game, drank a beer, and began to play dice.

Coleman saw Peters playing dice while Gurley watched. He then saw three men, including Garrett, approach the group. Garrett said something to one of the men in the group. That person then left. Coleman continued to play dice. He heard gunshots seconds later and saw Garrett pointing a gun toward the group. Everybody started to run.

Coleman ran to Kinzie Street where he saw Darrell Gurley. Coleman felt blood running down his back and realized he had been shot. He returned home and asked his sister to take him to the hospital. She drove him to Loretto Hospital, where he was treated.

Coleman spoke with Chicago police detective Richard Curley at the hospital. On September 10, 1990, he was shown a group of

photographs from which he identified Garrett as the shooter. Coleman also viewed a lineup on April 9, 1991, where he identified Garrett as the man who shot him on September 1, 1990.

Doctor Yuksel Konakci, an assistant medical examiner in the Cook County medical examiner's office, testified that he examined Peters and determined he died from a gunshot wound to the back.

Chicago police officer Bruno J. Muczynski testified that he was called to Loretto Hospital to investigate the shooting. He was unable to interview Peters because of his condition, but he spoke with Coleman. Coleman told Muczynski that three men were involved in the shooting. He described one offender as 6 feet 1 inch to 6 feet 2 inches tall, weighing about 225 pounds.

Detective Curley and his partner, Detective Richard Maher, also investigated the shooting of Peters and Coleman. On September 9, 1990, Day was identified in a lineup and charged. Curley and his partner continued to look for other suspects. On September 10, 1990, Curley received George Garrett's name and his photograph from Theresa Baines.

Curley visited Coleman at his home and showed him a series of photographs from which Coleman identified Garrett as one of the shooters. Curley also showed the photographs to Gurley. Gurley identified Garrett as involved in the shooting. Curley used the information to obtain an arrest warrant for Garrett and arrested him on March 14, 1991.

Curley testified that on April 9, 1991, he arranged to have Garrett participate in a lineup at Cook County jail. Coleman was asked to view the lineup, and he identified Garrett. In court, Curley identified Garrett as the same person Coleman identified at the lineup on April 9, 1991.

Detective Conwell testified that on September 1, 1990, he was assigned to investigate the death of Peters. He spoke with Coleman, who accompanied Conwell to North Laramie and pointed out the crime scene. Conwell also spoke to Jamison and Jones, who had taken Peters to the hospital after the shooting.

Conwell went to Peters' house on September 2, 1990. He found Gurley at Peters' home. Gurley told him that two men named "Poncho" and "Twon" were the persons who shot Peters. Gurley described "Poncho" as a black male, 20 to 23 years of age, 6 feet to 6 feet 2 inches tall, weighing 200 to 225 pounds. He described "Twon" as a bowlegged black male, 28 to 30 years old, 5 feet 10 inches tall, weighing around 180 pounds. Gurley also directed Detective Conwell to "Twon's" car on September 3, 1990.

Conwell stated that Antoine Day surrendered to police on

September 4, 1990. He was placed in a lineup and identified by Coleman and Gurley as one of the shooters.

Defendant testified. He stated he was 25 years old, was 6 feet 3 inches tall, and weighed 338 pounds. He stated that the photograph used to identify him was taken when he was 17. He could not remember where he was on the night of the shooting. But, he was sure he was not on Laramie Avenue and did not go to the Belmonte liquor store. He said he was arrested at his home on March 14, 1991, and charged with murder. He denied involvement in the shooting.

Defendant argues on appeal that the trial court erred when it denied his motion to suppress a lineup identification, motion for a new trial, and motion for substitution of judge. He also argues that the court abused its discretion in sentencing him to 60 years' imprisonment.

Defendant first argues that the court erred when it denied his motion to suppress a lineup identification. He filed a pretrial motion to suppress the lineup identification held on April 9, 1991. He argued that, at the time of his lineup, adversarial proceedings had commenced which required the presence of counsel.

The record reveals that Detective Curley, on behalf of deceased complainant Thomas Peters, filed a complaint for preliminary examination with the circuit court on September 10, 1990. An arrest warrant was issued, and defendant was taken into custody on March 14, 1991. An assistant public defender from the prearraignment section of that office filed an appearance to represent defendant on March 15, 1991.

A hearing was held on March 18, 1991. A private attorney, Jean Hill-McClain, filed an appearance to represent the defendant on that date, and the court noted her appearance for the record. The State moved for a continuance, which was granted, without objection, until April 11, 1991. Detective Curley placed the defendant in a lineup at Cook County jail on April 9, 1991.

In ruling on the motion to suppress the identification made at that lineup, the trial court found that the lineup took place at 10:20 a.m., that an assistant public defender signed a lineup packet at 10:45 a.m., that defendant was represented at the lineup by the public defender, and that since the public defender had never withdrawn his appearance, the public defender remained an attorney of record for the defendant on the date of the lineup and was present for it.

Whether the trial court was right or wrong in finding that the public defender was present at the lineup and remained counsel for the defendant is not the issue framed by this appeal. We must first address defendant's contention that he had a sixth amendment right

to the presence of any attorney at this stage in the proceeding before we need address the question of whether the public defender was still his lawyer.

At the time of the lineup on April 9, 1991, the defendant was still in custody pursuant to the complaint for preliminary examination and warrant for arrest issued on September 10, 1990. The State asked for and was granted a continuance on March 18, 1991. Hill-McClain did not object, nor did she request a bond hearing on that date. The defendant remained in custody under the "no bail" order entered by Judge Fox on the complaint for preliminary examination dated September 10, 1990.

■ A complaint for preliminary examination is not a formal commitment by the State to prosecute. *People v. Thompkins*, 121 Ill. 2d 401, 433, 521 N.E.2d 38 (1988). A defendant's sixth amendment right to counsel does not attach until adversarial proceedings begin. *People v. Hayes*, 139 Ill. 2d 89, 123-24, 564 N.E.2d 803 (1990).

■ Here, although defendant had been arrested and was in custody when the lineup was conducted, he had not been arraigned, indicted, or otherwise formally charged, nor had the State indicated an intention to charge. Absent a clear showing that the State had initiated and participated in an adversarial capacity, defendant is afforded no sixth amendment right to counsel.

Our supreme court in *People v. Wilson*, 116 Ill. 2d 29, 506 N.E.2d 571 (1987), held:

> "In this case the police officer presented a complaint for an arrest warrant to a judge *** pursuant to statute. [Citation.] The complaint was presented to the judge *ex parte*, it was done by a police officer rather than by an assistant State's Attorney, and the complaint was not filed in court until after the defendant appeared in the lineup. We do not believe that the procedure followed here can fairly be construed as the beginning of adversarial proceedings between the State and the defendant." *Wilson*, 116 Ill. 2d at 50-51.

Defendant would have us hold that adversarial proceedings should be viewed as underway, at the very latest, when the State appeared at the hearing on March 18, 1991, and requested a continuance. To do so would require that we hold a request for a continuance by the State to be a "formal commitment" to prosecute, even though a formal charge has not been filed. We find no authority for such a proposition. Consequently, defendant's argument that he was deprived of his lawyer of choice at the lineup is not of constitutional dimension, and his motion to suppress on constitutional grounds was properly denied.

■ Defendant next argues that the trial court erred when it denied his motion for a new trial. He argues that the evidence was insufficient to sustain a guilty verdict. We review claims attacking the sufficiency of the evidence under the standard set out in *People v. Young*, 128 Ill. 2d 1, 48, 538 N.E.2d 453 (1989). Our inquiry is whether, when viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Young*, 128 Ill. 2d at 48.

Here defendant was identified by Gurley and Coleman. They described defendant shortly after the shooting, identified him from either a lineup or photo arrays, and identified him in open court. Gurley knew defendant's nickname and had seen him in the neighborhood. Coleman was able to describe defendant and pick him out of a photo array shortly after the incident. We find the evidence sufficient for a rational trier of fact to find defendant guilty beyond a reasonable doubt. See *People v. Slim*, 127 Ill. 2d 302, 306, 537 N.E.2d 317 (1989).

■ Defendant also argues that the court erred when it denied his motion for a substitution of judge. Defendant made the motion after a hearing on his post-trial motion but before sentencing. He argued that the judge was required to disqualify himself because the judge was being represented by the State's Attorney's office in an unrelated matter. The defendant has failed to include in the record either a copy of the motion for substitution of judge, or the required affidavits in support of that motion. See 725 ILCS 5/115—5 (West 1992). The issue was not raised in the post-trial motion. Error in overruling defendant's petition is unreviewable absent an adequate record. See *People v. Campbell*, 323 Ill. 129, 130, 153 N.E.2d 596 (1926); *People v. Schueneman*, 320 Ill. 127, 128, 150 N.E.2d 664 (1926).

■ Defendant finally argues that the trial court abused its discretion when it sentenced him to 60 years' imprisonment. The trial court's determination of the appropriate sentence is within its sound discretion, and the decision will not be overturned absent abuse of that discretion. *People v. Wilson*, 143 Ill. 2d 236, 573 N.E.2d 937 (1991). The weight attributed to each factor in aggravation and mitigation depends on the circumstances of each case. *People v. Perruquet*, 68 Ill. 2d 149, 368 N.E.2d 882 (1977). The sentencing judge is in the best position to consider all factors relating to sentencing and is vested with wide discretion in making a reasoned judgment concerning the appropriate penalty. *People v. O'Neal*, 125 Ill. 2d 291, 531 N.E.2d 366 (1988).

We find no abuse of discretion. The hearing included argument

from both the State and defendant. The record reveals that the court considered factors in mitigation. They included that defendant was gainfully employed, had no history of alcohol or drug abuse, was married and the father of two children, and that he did not have an extensive criminal record. We find nothing in the record to suggest that the court did not give these matters appropriate weight within the context of the facts of the case.

Affirmed.

O'BRIEN, J., concurs.

PRESIDING JUSTICE HOFFMAN, dissenting:

Implicit in the majority's opinion is its finding that the defendant's sixth amendment right to counsel had not yet attached when he was identified on April 9, 1991, after being viewed in a lineup conducted at the Cook County jail. I disagree with the finding and, therefore, dissent.

Based upon a complaint for preliminary examination signed by a police officer charging the defendant with the offense of first degree murder (720 ILCS 5/9—1(a)(1) (West 1992)), an arrest warrant was issued and the defendant was taken into custody on March 14, 1991. On March 15, 1991, an assistant public defender filed an appearance purporting to represent the defendant. However, when this case came before the court on March 18, 1991, the defendant was represented by private counsel who filed her appearance. After the court appearance of March 18, the defendant was placed in a lineup at the Cook County jail and identified by James Coleman, a witness to the crime. The defendant's private attorney was never notified that a lineup was to be conducted. Instead, the police notified the public defender's office. Although an assistant public defender responded to the notification and presented himself at the jail, he left prior to the lineup being conducted after being informed by the defendant that he was represented by private counsel.

My reading of the record reveals that this case came before the trial court on March 18, 1991, for the purpose of conducting a preliminary hearing. The defendant's private attorney was present at that hearing and filed her appearance. The State informed the court that it was not ready to proceed and requested a continuance. The court granted the State's motion and set the matter for a preliminary hearing on April 11, 1991. Counsel for the defendant demanded trial.

A defendant's sixth amendment right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings—

whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882 (1972); *Brewer v. Williams*, 430 U.S. 387, 398, 51 L. Ed. 2d 424, 436, 97 S. Ct. 1232, 1240 (1977); see also *People v. Thompkins*, 121 Ill. 2d 401, 432, 521 N.E.2d 38 (1988). However, the exact point at which adversary criminal proceedings are said to be initiated for sixth amendment purposes is not at all clear or well settled. As this court noted in *People v. Boswell*, 132 Ill. App. 3d 52, 58, 476 N.E.2d 1154 (1985):

"In resolving this issue, we must look to the purpose with which the right to counsel serves. The Supreme Court has recognized that the 'core purpose' of the counsel guarantee is to assure aid at trial, 'when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor.' (*United States v. Ash* (1973), 413 U.S. 300, 309, 37 L. Ed. 2d 619, 626, 93 S. Ct. 2568, 2573.) Similarly, at certain 'critical' pre-indictment proceedings, the Supreme Court has extended an accused's right to counsel (*Kirby v. Illinois* (1972), 406 U.S. 682, 688-89, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882), recognizing that 'the accused [is] confronted, just as at trial, by the procedural system, or by his expert adversary, or by both' (*United States v. Ash* (1973), 413 U.S. 300, 310, 37 L. Ed. 2d 619, 627, 93 S. Ct. 2568, 2573), in a situation where the results of the confrontation 'might well settle the accused's fate and reduce the trial itself to a mere formality.' (*United States v. Wade* (1967), 388 U.S. 218, 224, 18 L. Ed. 2d 1149, 1156, 87 S. Ct. 1926, 1930, quoted in *United States v. Gouveia* (1984), 467 U.S. 180, 189, 81 L. Ed. 2d 146, 155, 104 S. Ct. 2292, 2298.) It is only at that time 'that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.' (*Kirby v. Illinois* (1972), 406 U.S. 682, 689, 32 L. Ed. 2d 411, 418, 92 S. Ct. 1877, 1882.) While the court has indicated the various contexts in which the right to counsel is implicated, the court has emphasized that '[t]he initiation of judicial criminal proceedings is far from a mere formalism.' 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417-18, 92 S. Ct. 1877, 1882."

This is not a case, as was the circumstance in the cases relied upon by the majority, where a defendant was subjected to a lineup identification without benefit of counsel after his arrest but before he was brought before a judge. See *People v. Hayes*, 139 Ill. 2d 89, 564 N.E.2d 803 (1990); *People v. Wilson*, 116 Ill. 2d 29, 506 N.E.2d 571 (1987). In this case, the defendant was arrested, held without bond

for four days before being brought before a judge for purposes of a preliminary hearing, had counsel of his choice present at the first scheduled preliminary hearing date, and, some 22 days after appearing in court represented by counsel, was placed in a lineup and identified without the benefit of his chosen counsel. The fact that the defendant's preliminary hearing was continued from March 18, 1991, to April 11, 1991, and the lineup identification took place in the interim is of no significance. The preliminary hearing process had commenced and, to my mind, the defendant's sixth amendment right to counsel had attached. See *Moore v. Illinois*, 430 U.S. 220, 54 L. Ed. 2d 424, 98 S. Ct. 458 (1977).

Because I find that the defendant's sixth amendment right to counsel was violated when he was placed in a lineup without the benefit of counsel of his choice after adversary judicial criminal proceedings had commenced, and because evidence of Coleman's April 9 lineup identification of the defendant was introduced at the trial of this cause, I would reverse the defendant's conviction and remand this case to the circuit court for a new trial.