Docket No. 82115–Agenda 30–May 1997.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. GEORGE GARRETT, Appellant.

Opinion filed November 20, 1997.

JUSTICE MILLER delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, George Garrett, was convicted of first degree murder and attempted first degree murder. Defendant was sentenced to 60 years' imprisonment on the first degree murder conviction and a concurrent sentence of 25 years on the attempted first degree murder count. Defendant appealed and the appellate court affirmed. 283 Ill. App. 3d 511. We granted defendant's petition for leave to appeal (166 Ill. 2d R. 315) and now affirm the judgment of the appellate court.

Defendant's convictions arise from events that occurred on September 1, 1990. At approximately 1:30 a.m. on that day, Darrell Gurley and his uncle, Thomas Peters, went to a liquor store in Chicago to purchase beer. Outside the liquor store, a group of men were playing a dice game. Gurley testified that he entered the store while Peters went to the dice game. Gurley purchased beer inside the liquor store, placed the beer inside his vehicle, then approached the dice game. After a few minutes, Gurley and Peters left the game and began walking towards the vehicle.

Gurley testified that he heard a male voice say “Yo.” Gurley turned around and saw “Poncho” and “Twon.” Gurley stated that he knew these two individuals from seeing them around the neighborhood. In court, Gurley identified “Poncho” as defendant, George Garrett, and “Twon” as the codefendant, Antoine Day. Day is not involved in this appeal. Gurley testified that he saw the two men draw guns from their waistbands.

Gurley yelled a warning to Peters and the two men began running in different directions. Gurley heard several gunshots. As he neared the other side of the street, Gurley looked back and noticed defendant shooting in his direction and Day shooting in the direction of Peters. The next morning, Gurley learned that Peters had died from a gunshot wound; he then called the police.

Chicago police detective Hugh Conwell picked Gurley up at his home and drove him to the police station. Gurley testified that he described the shooting to Conwell and gave Conwell the nicknames and a description of the two gunmen. Gurley stated that on September 10, 1990, Detective Richard Curley came to his house and showed him five photographs. From those photographs, Gurley identified defendant as one of the shooters.

James Coleman was also at the dice game outside the liquor store. Coleman testified that he saw three men, including defendant, approach the group. Shortly thereafter, Coleman heard gunshots and saw defendant pointing a gun in the direction of the dice game. Coleman began to run. He was shot in the back and was later treated at a hospital. Coleman stated that on September 10, 1990, he was shown a group of photographs by Detective Curley and identified a photograph of defendant as the man he believed to be the shooter.

Detective Curley and his partner, Detective Richard Maher, investigated the shooting. Curley testified that they were looking for an individual nicknamed “Poncho.” On September 10, 1990, Curley learned that “Poncho's” real name was George Garrett, the defendant. Curley obtained a photograph of defendant from one of his girlfriends. Curley's testimony corroborated the testimony of Coleman and Gurley that, from a series of five photographs, they identified defendant as the shooter.

Based on the identifications by Coleman and Gurley, Detective Curley filed a complaint in the circuit court on September 10, 1990, requesting an arrest warrant charging the defendant with murder. An arrest warrant for the defendant was subsequently issued. Six months later, on March 14, 1991, defendant was arrested. On March 15, 1991, defendant appeared at a bond hearing and an assistant public defender filed an appearance on his behalf.

On March 18, 1991, defendant again appeared in court. Attorney Joan HillMcClain, a private attorney, was present in court and filed an appearance on defendant's behalf. During the March 18 hearing, the State indicated that it was not ready to proceed. Attorney HillMcClain, on behalf of defendant, did not object to a continuance. The judge granted the State a continuance and set the matter for preliminary hearing on April 11. Defendant remained in custody under a “no bail” order entered on the complaint for preliminary examination dated September 10, 1990.

On April 9, 1991, two days before the scheduled preliminary hearing, Detective Curley arranged a lineup in which defendant was a participant. At the lineup, Coleman identified defendant as one of the persons responsible for the shooting on September 1, 1990.

Defendant filed a motion to suppress his identification by Coleman at the April 9 lineup claiming that he was not represented by counsel at the lineup. At the hearing on the motion to suppress, much of the testimony concerned a lineup packet prepared by the public defender's office. A lineup packet consists of seven or eight pages. In the packet, the public defender is supposed to provide the defendant's name and the type of crime with which he is charged. There is a sheet to state whether there is a police officer or State's Attorney present, whether the public defender has the police reports or case reports, and a list of witnesses, if any. There is also a sheet to provide details on the individuals that participate in the lineup. Additionally, there is the lineup rights sheet. The lineup rights sheet explains the accused's rights and includes a question as to whether the accused has an attorney. There is a place at the bottom of the sheet where the accused can waive the presence of the public defender at the lineup. This packet is intended to advise the accused of his or her rights during a lineup. The public defender assigned to cover a lineup is instructed to fill out a packet at all lineups.

Here, the lineup rights sheet was completed by Assistant Public Defender Fred DeBartolo and contained the name of attorney HillMcClain. Defendant's signature appears below the waiver at the bottom stating that defendant did not want an attorney from the office of the public defender to be present or to represent him at the lineup. Next to defendant's signature is the date and the time 10:45. Detective Curley and two others signed the sheet as witnesses; their names also appear next to the date and the time 10:45.

Detective Curley testified that he conducted the lineup in which Coleman identified the defendant. Curley stated that, on the morning of the lineup, he notified the public defender to be present for the lineup. It was Curley's understanding that defendant was represented by the public defender's office. Curley testified that defendant, after stating that he had another attorney, repeatedly refused to disclose the name of that attorney. Curley also stated that, to his knowledge, defendant never attempted to contact any private attorney. Curley testified that the lineup was conducted at 10:20 a.m. Curley stated that DeBartolo was present during the viewing of the lineup. Although DeBartolo was not in Curley's room, Curley testified that DeBartolo was in one of the three rooms from which the lineup could be observed. Additionally, Curley testified that he signed the lineup rights sheet at 10:45 a.m. Further, Curley testified that he did not see the lineup rights sheet when he conducted the lineup at 10:20 a.m., that he would not have known what information was on the document when he conducted the lineup, and that he had no knowledge of the name of defendant's private attorney prior to the time he saw the lineup rights sheet.

Defendant testified that, on April 9, 1991, he was taken to the area of Cook County jail where lineups are held and told by Detective Curley that he was being placed in a lineup. While there, defendant saw Curley, another detective, the Cook County investigator, a Cook County sheriff and three other inmates. Defendant stated that he told Curley he wanted to see his attorney, Joan HillMcClain. Defendant then saw DeBartolo and claims to have told both Curley and DeBartolo several times that he wanted to call his attorney and that he gave them the name of his attorney. Defendant testified that he signed the lineup rights sheet prior to the lineup. He also stated that he told DeBartolo that he did not want him present and that, to his knowledge, DeBartolo did not view the lineup.

DeBartolo testified that, on the morning of the lineup, he was notified by his supervisor to attend a lineup and prepare a lineup packet for the defendant. DeBartolo testified that he arrived at the jail between 9 and 10 o'clock in the morning for the purpose of viewing defendant's lineup. DeBartolo met with defendant and completed the lineup packet. DeBartolo testified that defendant asked him why he was there and stated that he had another lawyer. DeBartolo stated that defendant gave him the name of his other attorney but that defendant was not given an opportunity to call this attorney while DeBartolo was present. DeBartolo stated that he left the jail and did not view the lineup. DeBartolo testified that he called attorney HillMcClain when he returned to his office and informed her that one of her clients was being placed in a lineup. On cross-examination, DeBartolo testified that he went over defendant's rights with him at least four times and that defendant stated that he did not want DeBartolo present during the lineup. Further, DeBartolo testified that he never heard defendant ask to make a telephone call. DeBartolo stated that he does not remember if defendant gave him attorney HillMcClain's phone number or if he looked it up after he had returned to his office and only then placed it on the lineup rights sheet.

The trial court denied defendant's motion to suppress the identification by Coleman at the April 9, 1991, lineup. The trial judge noted that no one from the public defender's office filed leave to withdraw its appearance after counsel HillMcClain filed her appearance on defendant's behalf on March 18, 1991. The trial judge believed that the public defender's office, having filed an entrance of appearance on behalf of defendant, still represented defendant at the time of the lineup. Although DeBartolo denies having viewed the lineup, the trial judge noted that DeBartolo said he arrived before the lineup, the uncontradicted testimony of Detective Curley is that the lineup occurred around 10:20, and the time the lineup rights sheet was signed was 10:45. Under these facts, the trial judge believed that an attorney with an appearance of record was representing defendant at the lineup; therefore, the identification testimony was admissible.

Testimony that Coleman identified defendant at the lineup was introduced at trial. Defendant was found guilty and sentenced to 60 years' imprisonment for first degree murder and a concurrent sentence of 25 years for attempted murder. The appellate court affirmed. 283 Ill. App. 3d at 518. The appellate court believed that it was immaterial whether the public defender continued as counsel for the defendant or was present at the lineup. 283 Ill. App. 3d at 515. Instead, the appellate court found that adversarial judicial proceedings had not yet begun at the time of the lineup; therefore, defendant did not have a sixth amendment right to counsel at that time. 283 Ill. App. 3d at 516.

In this appeal, defendant argues that his sixth amendment right to counsel had attached at the time of the April 9 lineup because he was involved in a critical stage of an adversarial judicial proceeding. Defendant claims that adversarial judicial proceedings had commenced at the time of the lineup because he was arrested, brought before a judge for a bond hearing, and, three days later, brought before a judge for purposes of a preliminary hearing that was continued until a later date. Defendant additionally asserts that adversarial judicial proceedings had commenced because he had counsel of his choice present at the first scheduled preliminary hearing date and he was placed in a lineup without the benefit of his chosen counsel 22 days after his appearance in court with that counsel. 

The State argues that defendant's sixth amendment right to counsel had not yet attached at the time of the lineup because adversary judicial criminal proceedings had not commenced. The State maintains that there were no actions by the prosecutor before the time of the lineup which indicate that the State had made a formal commitment to prosecute the defendant. The State also believes that the defendant had an attorney of record present if it should be found that defendant's right to counsel had already attached at the time of the lineup. Finally, the State maintains that if there was any error in allowing testimony of Coleman's identification of defendant at the lineup, it was harmless and should not affect defendant's conviction.

We must first determine whether defendant's sixth amendment right to counsel had attached at the time he was placed in the lineup. The sixth amendment to the United States Constitution states in relevant part that “[i]n all criminal prosecutions, the accused shall enjoy the right to *** have the Assistance of Counsel for his defence.” U.S. Const., amend. VI. The Court has made clear that the sixth amendment right to counsel does not attach until the “ ` “government has committed itself to prosecute, and ... the adverse positions of government and defendant have solidified.” ' ” 
Moran v. Burbine
, 475 U.S. 412, 432, 89 L. Ed. 2d 410, 428, 106 S. Ct. 1135, 1146 (1986), quoting 
United States v. Gouveia
, 467 U.S. 180, 189, 81 L. Ed. 2d 146, 155, 104 S. Ct. 2292, 2298 (1984), quoting 
Kirby v. Illinois
, 406 U.S. 682, 689, 32 L. Ed. 2d 411, 418, 92 S. Ct. 1877, 1882 (1972) (plurality opinion). “It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.” 
Kirby
, 406 U.S. at 689, 32 L. Ed. 2d at 418, 92 S. Ct. at 1882. 

The Supreme Court has held that the sixth amendment right to counsel attaches at or after the initiation of adversarial judicial proceedings–whether by way of a formal charge, preliminary hearing, indictment, information, or arraignment. 
Kirby
, 406 U.S. at 688-89, 32 L. Ed. 2d at 417, 92 S. Ct. at 1881-82; 
Gouveia
, 467 U.S. at 185, 81 L. Ed. 2d at 152, 104 S. Ct. at 2296. In a later decision, the Court stated that “[i]t is clear *** [that] the defendant has the right to the presence of an attorney during any interrogation occurring after the first formal charging proceeding, the point at which the Sixth Amendment right to counsel initially attaches. [Citations].” 
Moran
, 475 U.S. at 428, 89 L. Ed. 2d at 425, 106 S. Ct. at 1144.

In the present case, there had been no formal charging proceeding, preliminary hearing, indictment, information, or arraignment at the time of the lineup. Our court has held, however, that the level of prosecutorial involvement may be considered in determining whether a defendant's sixth amendment right to counsel has attached. 
People v. Young
, 153 Ill. 2d 383, 404 (1992), citing 
People v. Hayes
, 139 Ill. 2d 89, 125 (1990); 
People v. Wilson
, 116 Ill. 2d 29, 50-51 (1987); 
People v. Owens
, 102 Ill. 2d 88, 101 (1984).

In 
Wilson
, a police officer presented a complaint for an arrest warrant to a judge 
ex parte
 without the assistance of the State's Attorney. 
Wilson
, 116 Ill. 2d at 50. Defendant appeared in a lineup the next day. The complaint was not filed in court until after the defendant appeared in the lineup. 
Wilson
, 116 Ill. 2d at 50. Under these facts, this court held that adversarial proceedings had not begun between the State and defendant and, therefore, defendant had no right to counsel at the lineup. 
Wilson
, 116 Ill. 2d at 50-51. 

In 
People v. Thompkins
, 121 Ill. 2d 401, 433 (1988), before being indicted or arraigned, defendant was interrogated by and confessed to the police while in a lockup area awaiting his initial court appearance. The court found that defendant waived his fifth amendment right to counsel (
Thompkins
, 121 Ill. 2d at 434) and addressed whether defendant had a sixth amendment right to counsel at the time of the interrogation (
Thompkins
, 121 Ill. 2d at 432-33). Like the present case, a complaint for preliminary examination charging defendant with murder had already been issued when defendant made the inculpatory statements. 
Thompkins
, 121 Ill. 2d at 433. This court held that adversary judicial proceedings had not been initiated against the defendant at the time of his interrogation and found that the complaint “did not constitute a formal commitment by the People to prosecute defendant.” 
Thompkins
, 121 Ill. 2d at 433. Because defendant's sixth amendment right to counsel had not attached at the time he confessed to the police, his statements were properly admitted at trial. 
Thompkins
, 121 Ill. 2d at 433.

In 
Hayes
, a complaint for preliminary examination was filed by a police officer and an arrest warrant was issued by a judge for attempted armed robbery. 
Hayes
, 139 Ill. 2d at 122. The State's Attorney's office had reviewed the application and approved the issuance of the arrest warrant. 
Hayes
, 139 Ill. 2d at 122. Defendant was arrested and placed in a lineup, where he was identified as the person attempting the robbery. 
Hayes
, 139 Ill. 2d at 122. He was also identified by six witnesses as the man who shot and killed one of the robbery victims. 
Hayes
, 139 Ill. 2d at 122-23. Defendant was eventually convicted of murder and six related counts of armed robbery. 
Hayes
, 139 Ill. 2d at 103. This court stated that, “in determining whether an accused's sixth amendment right to counsel attaches upon the filing of a criminal complaint, the court must consider the degree to which the State's prosecutorial forces have focused upon the accused.” 
Hayes
, 139 Ill. 2d at 125. The court then noted that the filing of the complaint and issuance of the arrest warrant for one charge did not indicate that the State would prosecute defendant for a charge not specified in the complaint. 
Hayes
, 139 Ill. 2d at 126. The court held that defendant did not have the right to counsel for the murder charge at the time of the lineup because there was no proof of “significant prosecutorial involvement” in obtaining the arrest warrant. 
Hayes
, 139 Ill. 2d at 126.

Applying this court's previous decisions regarding a defendant's sixth amendment right to counsel to the present case, we do not believe that adversarial judicial proceedings had commenced at the time of the lineup such that defendant's sixth amendment right to counsel had attached. At the time of the lineup, there had been no formal charge, preliminary hearing, indictment, information, or arraignment. Barring the occurrence of any of these stages, defendant has a sixth amendment right to counsel only if there has been significant prosecutorial involvement at the time of the questioned action or if the government has committed itself at that time to prosecute defendant. Therefore, our inquiry is into the degree of prosecutorial involvement at the time of the lineup. 

In the present case, the record does not establish significant prosecutorial involvement prior to or at the time of the lineup. The complaint was filed by Detective Curley and the arrest warrant was issued on September 10, 1990, without the assistance of the State's Attorney. As in 
Thompkins
, we do not feel that the filing of this complaint constitutes a formal commitment by the State to prosecute defendant so as to attach defendant's sixth amendment right to counsel.

The only prosecutorial involvement in this case prior to the April 9 lineup occurred at hearings on March 15 and March 18. At the March 15 hearing, the judge ruled that defendant's bond, set the previous December, was to stand and denied the State leave to file a “Violation of Bail Bond.” The case was transferred to a preliminary hearings judge for March 18. At the March 18 hearing, the State indicated it was not ready to proceed. The court afforded the State a continuance and the matter was set for preliminary hearing for April 11. Counsel for the defendant stated that continuance until April 11 “would be fine” and made no objections. No further action occurred on the case until the April 9 lineup. While defendant remained in jail for 22 days from the time of the continuance until the lineup, this, by itself, does not commence adversarial judicial proceedings and invoke the sixth amendment right to counsel. Finally, the record does not indicate that the State's Attorney was present at the lineup in any capacity.

We do not believe that the State's minimal actions at the two hearings establish significant prosecutorial involvement or a commitment on the part of the State to prosecute so as to commence adversarial judicial proceedings. We find that the State's role at the two hearings was insufficient for defendant's sixth amendment right to counsel to attach.

In sum, at the time of the lineup there had been no formal charge, preliminary hearing, indictment, information, or arraignment. Further, during the filing of the complaint, the two hearings, defendant's detention, and the lineup, there was neither significant prosecutorial involvement nor a commitment by the State to prosecute. Under these facts, adversarial judicial proceedings had not begun at the time of the lineup and, therefore, defendant had no sixth amendment right to counsel.

For the foregoing reasons, we find that defendant's sixth amendment right to counsel did not attach at the April 9 lineup because adversarial judicial proceedings had not commenced against the defendant. Accordingly, we affirm the judgment of the appellate court.

Affirmed.