THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAWRENCE T. RIPPLINGER, Defendant-Appellant.

Fifth District    No. 5—99—0122

Opinion filed October 25, 2000.

George R. Ripplinger, of George Ripplinger & Associates, of Belleville, for appellant.

Robert Haida, State's Attorney, of Belleville (Norbert J. Goetten, Stephen E. Norris, and Patrick D. Daly, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

Sometime during the early morning hours of June 18, 1994, Lawrence T. Ripplinger (defendant), while driving on Interstate 64, veered off the interstate, into the median, and rolled the pickup truck he was driving. Michael Sand, a passenger in defendant's vehicle, was ejected and died at the scene. Defendant was charged with reckless homicide. At the trial, evidence demonstrated that defendant was intoxicated at the time of the accident.

On December 4, 1998, following a jury trial in St. Clair County, defendant was found guilty of reckless homicide. The trial court entered a judgment on the verdict and sentenced defendant to four years in the Illinois Department of Corrections or, pending qualification, impact incarceration for 120 to 180 days. Defendant now appeals his conviction and raises the following four issues for our review: (1) whether the trial court erred in admitting into evidence blood and urine samples seized by the Illinois State Police and whether the trial court erred in admitting the results of tests performed on these samples, (2) whether the trial court erred in allowing two Illinois State Police officers to testify as to a conversation they had with defendant while defendant was recovering in the hospital a few days after the accident, (3) whether the trial court erred in prohibiting defendant from presenting evidence or argument as to the proximate cause of the victim's death, and (4) whether the trial court erred in admitting into evidence defendant's hospital medical records and testimony derived from these records that defendant's blood-alcohol content exceeded 0.10. For the following reasons, we affirm.

Most of the facts in this case are undisputed. On June 17, 1994, around 10:30 p.m., defendant and Sand, along with two female friends,

began drinking at a bar in O'Fallon, Illinois. At the trial, the females testified that defendant was drinking beer while at the bar. Around 2 a.m., defendant and the others left the bar and went to the home of one of the females. At the home, one of the females passed out and the other went to bed. Defendant and Sand then left the home and went to a club in Sauget, Illinois.

Around 4 a.m., while driving on the interstate, defendant lost control of his pickup truck. The pickup truck left the interstate, crossed the median, and rolled. Sand was ejected from the truck and died at the scene. Defendant was rendered unconscious.

Sometime between 4 a.m. and 4:45 a.m., Illinois State Police Officer Mark Sprankle was called to the scene. When he arrived, several ambulance personnel were attending to defendant. Sprankle approached defendant's pickup truck, where defendant was unconscious. Sprankle testified that he got within a few inches of defendant's face and detected a "fairly strong odor of alcoholic beverage" on his breath. Defendant was eventually transported by helicopter to Barnes Hospital in St. Louis, Missouri.

. After completing his examination of the accident scene, Sprankle traveled to Barnes Hospital in Missouri to continue the accident investigation. He arrived at the hospital sometime around 6 a.m. Defendant was unconscious and in the emergency room when Sprankle arrived. While at the hospital, Sprankle issued defendant two citations and requested one of the attending nurses to draw blood from defendant. Jennifer Bredell, a registered nurse, drew two blood samples and a urine sample from defendant at 6:17 a.m. and gave them to Sprankle. This blood was subsequently sent to the Illinois State Police lab for analysis. At the trial, Cathy Anderson, a forensic scientist with the Illinois State Police, testified that the results of the analysis revealed that at the time the blood was taken, allowing for some biological variability, defendant's blood-alcohol content under whole-blood testing was a "conservative" 0.118.

On June 21, 1994, three days after the accident, defendant was still in the hospital in the intensive care unit. Illinois State Police Officers Donald Leach and Terry Klutts traveled to Missouri to ask defendant a few questions about the accident. Leach and Klutts spoke with defendant for three to five minutes. At the trial, Leach and Klutts testified that one of the questions they asked defendant was how much he had to drink the evening before the accident and that defendant replied, "[T]oo much."

Although additional evidence was presented during the trial, we shall present and discuss that evidence when discussing the issue on appeal to which it is relevant. In any event, after hearing all the evi-

dence in this case, the jury returned a verdict of guilty, and the trial court entered a judgment on the verdict. We now turn to the issues raised by defendant on this appeal.

The first issue we shall address is whether the trial court erred when it denied defendant's motion to suppress blood and urine samples seized by Officer Sprankle of the Illinois State Police and the results of tests performed on these samples. As we have just stated, Sprankle traveled to Missouri shortly after the accident and obtained two blood samples from defendant while defendant was unconscious in the emergency room. The samples and test results regarding these samples were admitted into evidence.

Prior to the trial, defendant filed a motion to suppress the blood and urine samples and the test results derived from these samples. Defendant argued before the trial court that this evidence should be suppressed because Sprankle had no authority to "demand" blood from an unconscious defendant at a hospital in Missouri. Defendant argued that such authority is not granted under Illinois law and that Sprankle's actions infringe on Missouri's sovereignty. The trial court denied defendant's motion to suppress and found that Sprankle had authority to obtain the blood samples pursuant to sections 11—501(a), 11—501.2(a), 11—501.4(b), and 11—501.6(b) of the Illinois Vehicle Code (625 ILCS 5/11—501(a), 11—501.2(a), 11—501.4(b), 11—501.6(b) (West 1996)). The trial court rejected defendant's argument that allowing Sprankle to demand and seize the blood and urine samples infringed upon Missouri's sovereignty. Defendant now argues that the trial court erred in denying his motion to suppress this evidence.

■ When reviewing a trial court's ruling on a motion to suppress, we generally do not disturb its ruling unless its ruling is manifestly erroneous. *People v. Ciesler*, 304 Ill. App. 3d 465, 470 (1999). However, where there is no dispute as to the witnesses' credibility, we will conduct a *de novo* review of the legal questions raised by the appeal. *Ciesler*, 304 Ill. App. 3d at 470. In the instant case, there is no dispute as to the witnesses' credibility or as to the facts that underlie defendant's motion to suppress. Therefore, we shall conduct our review *de novo*.

On appeal, defendant argues that the trial court's decision is in error because none of the statutory sections relied upon by the trial court grant an Illinois police officer authority to cross state lines and seize blood from an unconscious defendant. Defendant argues that because the Illinois legislature has not specifically granted Sprankle the authority to demand blood from an unconscious defendant outside the borders of the State of Illinois, the blood samples and test results should have been suppressed. We disagree with defendant's arguments.

■ The basis for the trial court's decision that Officer Sprankle had authority to travel to Missouri and seize the blood from the unconscious defendant is found in section 11—501.1 of the Illinois Vehicle Code (625 ILCS 5/11—501.1 (West 1998)). Section 11—501.1(a) provides in relevant part:

> "(a) Any person who drives or is in actual physical control of a motor vehicle upon the public highways of this State shall be deemed to have given consent *** to a chemical test or tests of blood, breath, or urine for the purpose of determining the content of alcohol *** in the person's blood if arrested, as evidenced by the issuance of a Uniform Traffic Ticket, for any offense as defined in Section 11—501 or a similar provision of a local ordinance. The test or tests shall be administered at the direction of the arresting officer. *** *For purposes of this Section, an Illinois law enforcement officer of this State who is investigating the person for any offense defined in Section 11—501 may travel into an adjoining state, where the person has been transported for medical care, to complete an investigation and to request that the person submit to the test or tests set forth in this Section.*" (Emphasis added.) 625 ILCS 5/11—501.1(a) (West 1998).

The provision in this statute that grants an Illinois law enforcement officer authority to travel into an adjoining state to complete an investigation and to request that the person submit to the tests set forth in this section has recently been found constitutional in *People v. Every*, 184 Ill. 2d 281 (1998). A review of our supreme court's decision in *Every* is helpful to our analysis of the issue at hand.

In *Every*, the defendant was involved in a one-car accident. A deputy officer arrived at the scene and detected a strong odor of alcohol on the defendant's breath and observed that his eyes were glassy and that his balance was unsteady. The deputy proceeded to give the defendant a field sobriety test, which the defendant failed. A field breathalyzer test revealed that the defendant had a blood-alcohol concentration of 0.174. The defendant was then transported by ambulance to a hospital in Iowa.

At the hospital, the deputy issued the defendant a citation for violating section 11—501(a)(2) of the Illinois Vehicle Code (625 ILCS 5/11—501(a)(2) (West 1996)). He then read the defendant the warning statement required by statute and obtained the defendant's consent to have a blood sample taken. The blood sample was eventually tested, and the results revealed a blood-alcohol concentration of 0.177.

Prior to the trial, the defendant moved to suppress the evidence taken from him at the hospital in Iowa. *Every*, 184 Ill. 2d at 283. The defendant challenged the constitutionality of section 11—501.1(a), arguing that this provision of the statute granting the deputy author-

ity to obtain blood samples from the defendant while they were in Iowa was unconstitutional. *Every*, 184 Ill. 2d at 283. The trial court agreed and found the provision unconstitutional. *Every*, 184 Ill. 2d at 283-84.

On direct appeal, our supreme court reversed the trial court. In reaching its decision, our supreme court rejected the defendant's arguments that the provision violated the defendant's due process rights or intruded on state sovereignty. *Every*, 184 Ill. 2d at 286. Our supreme court noted, "The officer's actions in this case do not involve an exercise of his official powers in another state[ ] but rather depend on the defendant's implied consent to the evidence-gathering procedure set out in the Illinois Vehicle Code." *Every*, 184 Ill. 2d at 286. Our supreme court explained that the defendant's consent to a blood test could be found in section 11—501.1, which provides that any person who drives or is in actual physical control of a motor vehicle upon the public highways of Illinois "shall be deemed to have given consent" to the chemical testing of their blood, breath, and urine for the purpose of determining the content of alcohol in the driver's blood. *Every*, 184 Ill. 2d at 286-87. Our supreme court continued that the purpose of the challenged measure was to permit law enforcement officers to obtain blood samples from drivers who, for medical reasons, have been taken to an adjoining state and that the provision "reflects a balance struck between the injured driver's interest in obtaining prompt medical treatment and the State's interest in securing reliable evidence before it vanishes." *Every*, 184 Ill. 2d at 287. The court concluded, "The defendant should not be released from the statutory consequences of his actions merely because he was taken to an adjoining state for treatment of his injuries." *Every*, 184 Ill. 2d at 287.

In the instant case, defendant concedes that an Illinois State Police officer may travel to an adjoining state to *request* blood from a *conscious* defendant at a hospital in the adjoining state. Defendant also concedes that an Illinois State Police officer may demand blood from an unconscious defendant *if* the defendant is at a hospital in Illinois. However, defendant argues that this section does not grant an Illinois State Police officer authority to demand blood from an unconscious defendant at a hospital in an adjoining state. We believe that defendant's reading of section 11—501.1 of the Illinois Vehicle Code is too narrow.

■ Absent from defendant's brief and arguments on appeal, and absent from the trial court's list of sections on which it based its ruling, is reference to section 11—501.1(b) of the Illinois Vehicle Code (625 ILCS 5/11—501.1(b) (West 1998)). Section 11—501.1(b) provides:

"(b) Any person who is dead, unconscious, or who is otherwise in

a condition rendering the person incapable of refusal, shall be deemed not to have withdrawn the consent provided by paragraph (a) of this Section and the test or tests may be administered, subject to the provisions of Section 11—501.2." 625 ILCS 5/11—501.1(b) (West 1998).

Pursuant to this section, even though a defendant may be unconscious, unconsciousness will not to be construed as a withdrawal of consent to the taking of blood samples for testing purposes. ·

■ As this court has previously held, the purpose of section 11—501 is to assist in a determination of whether motor vehicle drivers suspected of intoxication are under the influence of alcohol and to make the state's streets and highways safer for citizens by making the prosecution of intoxicated drivers easier. *People v. Huisinga*, 242 Ill. App. 3d 418, 422 (1993). This court has noted that the implied consent statute should be liberally construed to accomplish the purpose of protecting the citizens of this state upon the highways. *People v. Porretta*, 127 Ill. App. 3d 572, 576 (1984).

■ When reviewing a legislative enactment, this court must construe the statute in such a way as to promote its essential purposes and must not read it so rigidly as to defeat the legislature's intent. *People v. Owens*, 240 Ill. App. 3d 168, 171 (1992). "The court may look not only to the language of the statute but also to the reason and necessity for the law, the evils the legislature sought to remedy, and the objects and purposes the legislature sought to accomplish." *People v. Tellez*, 295 Ill. App. 3d 639, 643 (1998). Our role is to examine the entire statute for guidance as to the legislative intent and, upon ascertaining the legislature's intent, give it effect. See *In re Application of County Collector of McHenry County*, 181 Ill. App. 3d 345, 348 (1989).

■ We believe that when defendant got behind the wheel of his vehicle and began driving on the Illinois state highways and put at risk the safety of the citizens in this state, not only did he consent to the evidence-gathering procedures of section 11—501.1(a) (see *Every*, 184 Ill. 2d at 286), but he also subjected himself to section 11—501.1(b). In other words, defendant impliedly consented to the taking and testing of his blood if he was subsequently rendered unconscious and fortuitously transported to a hospital in an adjoining state. We reject defendant's argument that merely because he was unconscious and transferred to a hospital in a neighboring state, he should be allowed to escape the statutory consequences of his actions and hinder the Illinois prosecution for his actions. *People v. Preston*, 205 Ill. App. 3d 35, 42 (1990). Defendant's requested result runs contrary to the purpose of the implied consent statute.

Accordingly, we believe that section 11—501.1(a) and section 11—501.1(b) provided Sprankle with the authority to travel to Missouri and take blood samples from defendant, who was unconscious at the hospital in Missouri. Sprankle went to the hospital and requested blood samples from defendant according to the evidence-gathering procedures laid out in our Illinois Vehicle Code, to which defendant subjected himself when he got behind the wheel of his pickup truck shortly before the accident. Although he was unconscious, defendant had not withdrawn his consent to the taking of his blood upon Sprankle's request. Accordingly, we find no error in the trial court's decision denying defendant's motion to suppress.

The second issue we shall address is whether the trial court erred in denying defendant's motion to suppress the statements he made to Illinois State Police officers while he was confined to a hospital bed in the intensive care unit at Barnes Hospital in Missouri. The facts as they pertain to this issue are as follows.

Three days after the accident, Officers Leach and Klutts visited defendant at the hospital in Missouri. At the time, defendant was in the intensive care unit of the hospital but was conscious and sitting up in his bed. Monitors were attached to defendant, defendant had staples along his scalp, IVs were in defendant, and defendant had a drainage hose in his head. There is no dispute that, due to defendant's medical care and condition, defendant was not physically free to simply get up and walk out of the room.

At the motion-to-suppress hearing, Leach testified that, upon entering the hospital room, he showed defendant his credentials and told him that he and Klutts were police detectives and that they wanted to talk to defendant about the accident. Leach testified that defendant indicated he was willing to talk and that at no time did defendant ask for an attorney. Leach testified that he did not read defendant his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)), but at no time did he tell defendant he was under arrest. Leach stated that throughout the conversation he did not raise his voice, make threats, or tell defendant he was not "free" to leave.

During their conversation, Leach asked defendant if he remembered anything about the accident. Defendant replied that he did not. Leach then asked defendant if he remembered what he had been doing the night before the accident, and defendant responded that he was out drinking. Leach then asked defendant if he remembered how much he had to drink, and defendant responded, "[T]oo much." At the hearing, Klutts corroborated Leach's testimony and stated that the conversation with defendant lasted about five minutes "at the

most." Defendant testified that he had no recollection of this conversation with the officers and that he did not remember talking to them at his room in the hospital.

Following the hearing, defendant argued that his statements to the officers should be suppressed for two reasons: first, because the officers conducted a custodial interrogation of defendant without reading defendant his *Miranda* rights and, second, because the officers elicited statements from defendant in the absence of counsel after defendant had been charged with a crime and his sixth amendment right to counsel had attached. The trial court rejected defendant's arguments, finding that it was not a custodial interrogation and that the sixth amendment right to counsel did not attach at the time of this interrogation. We shall first address defendant's argument that the trial court erred in finding that this was not a custodial interrogation.

■ "A custodial interrogation occurs when police question a person after he has been taken into custody or deprived of his freedom of movement in any significant way." *People v. Rivera*, 304 Ill. App. 3d 124, 128 (1999). Statements obtained from a person as a result of a custodial interrogation should be suppressed if that person did not receive his *Miranda* warnings. *Rivera*, 304 Ill. App. 3d at 128. As an accused has the privilege against self-incrimination during a custodial interrogation, prior to the interrogation he or she should be forewarned of his or her rights. *People v. V.S.*, 244 Ill. App. 3d 478, 482 (1993).

■ In the instant case, there is no dispute that defendant was not read his *Miranda* rights; therefore, the sole issue focuses on the determination of whether defendant was in custody. Custody occurs when a defendant is placed under formal arrest or when a defendant's freedom of movement is restrained to the degree normally associated with a formal arrest. *People v. Goyer*, 265 Ill. App. 3d 160, 164 (1994). In determining whether an interrogation was custodial, the court must look at several factors: (1) the location, mood, and length of the interview, (2) the number of police officers present, (3) the presence or absence of the defendant's family or friends, (4) any indicia of formal arrest, such as physical restraint, the show of weapons or force, booking, or finger printings, and (5) the manner by which the defendant arrived at the place of the interview. *Goyer*, 265 Ill. App. 3d at 166. The court must examine all these factors surrounding the questioning and then objectively evaluate whether a reasonable, innocent person would believe he or she was expressly or impliedly bound to remain in the presence of the officials. *V.S.*, 244 Ill. App. 3d at 484. Again, only statements made in a custodial atmosphere need to be suppressed. *V.S.*, 244 Ill. App. 3d at 483. We will not disturb the trial court's ruling as to whether a custodial interrogation occurred unless it is against the manifest weight of the evidence. *Rivera*, 304 Ill. App. 3d at 128.

■ Upon examining the record, we do not believe that the trial court's decision is against the manifest weight of the evidence. First, there is nothing as to the location, mood, and length of the interview that suggests defendant was in custody. The police officers came to defendant, who was in the intensive care unit of the hospital. They did not raise their voices during the interview, make threats, badger defendant, levy accusations against defendant, or suggest that defendant was not free to end the interview at any time. In addition, the length of the interview was no more than five minutes. There were only two police officers in the room, they did not order that defendant be physically restrained, there were no indicia of a formal arrest, and there was no showing of weapons or force. Although there is no dispute that defendant was not able to physically get up and walk away, his inability to do so was in no way caused by the police officers. Merely because the questioning of defendant occurred at a hospital does not in itself amount to a custodial interrogation. See *People v. Bates*, 169 Ill. App. 3d 218, 222 (1988). We believe that the trial court's finding that a reasonable person innocent of any crime under the same circumstances would not believe he was in custody is not against the manifest weight of the evidence. Accordingly, we find no error in the trial court's decision denying defendant's motion to suppress his statements on the ground that this was a custodial interrogation and defendant did not receive his proper *Miranda* warnings.

We now turn to defendant's argument that the statements should have been suppressed because they were obtained in violation of defendant's sixth amendment right to counsel. Defendant argues that the interrogation at the hospital occurred after the State had initiated an adversarial judicial proceeding against him and, therefore, he was entitled to have counsel present during the interrogation. The State argues that the "adverse positions of the government and defendant" had yet to solidify and, therefore, defendant's sixth amendment right had not yet attached.

■ The sixth amendment to the United States Constitution provides, in relevant part, "In all criminal prosecutions, the accused shall enjoy the right to *** have the Assistance of Counsel for his defence." U.S. Const., amend. VI. A person's sixth amendment right to counsel attaches after adversary judicial criminal proceedings have been initiated against him by way of a formal charge, preliminary hearing, indictment, information, or arraignment. *People v. Hunt*, 240 Ill. App. 3d 496, 502 (1992). Defendant's right to counsel attaches at this point to ensure "that the accused has counsel at critical preindictment proceedings where he is confronted by the procedural system, an expert adversary[,] or both[ ] and where the results of the confronta-

tion might determine his fate and make the trial itself a mere formality." *Hunt*, 240 Ill. App. 3d at 502. The supreme court has held that this sixth amendment right to counsel attaches when the government has committed itself to prosecute and " 'the adverse positions of government and defendant have solidified.' " *People v. Garrett*, 179 Ill. 2d 239, 247 (1997), quoting *Kirby v. Illinois*, 406 U.S. 682, 689, 32 L. Ed. 2d 411, 418, 92 S. Ct. 1877, 1882 (1972) (plurality opinion). It is at this point that " 'a defendant finds himself faced with the prosecutorial forces of organized society[ ] and immersed in the intricacies of substantive and procedural criminal law.' " *United States v. Gouveia*, 467 U.S. 180, 189, 81 L. Ed. 2d 146, 155, 104 S. Ct. 2292, 2298 (1984), quoting *Kirby*, 406 U.S. at 689, 32 L. Ed. 2d at 418, 92 S. Ct. at 1882.

The issue in this case is whether the adverse positions of the government and defendant had solidified, thereby attaching defendant's sixth amendment right to counsel at the time Officers Leach and Klutts interviewed defendant in the hospital. Accordingly, it is the duty of the court to closely examine the degree to which the State's prosecutorial forces have focused upon the accused. *People v. Hayes*, 139 Ill. 2d 89, 125 (1990). Based upon our supreme court's decision in *Garrett*, we find no error in the decision of the trial court that defendant's sixth amendment right to counsel had not attached at the time of the interview.

In *Garrett*, a shooting occurred on September 1, 1990. Based upon the statements of identification witnesses, a detective filed a complaint in the circuit court on September 10, 1990, requesting an arrest warrant charging the defendant with murder. An arrest warrant was issued, and on March 14, 1991, the defendant was arrested. *Garrett*, 179 Ill. 2d at 242. On March 15, 1991, the defendant appeared at a bond reduction hearing, and an assistant public defender filed an appearance on the defendant's behalf. *Garrett*, 179 Ill. 2d at 242. The defendant then appeared in court on March 18, 1991, where the State indicated that it was not ready to proceed. The trial judge granted the State a continuance while the defendant remained in custody. A preliminary hearing was set for April 11, 1991.

On April 9, 1991, two days prior to the scheduled hearing, a detective arranged a lineup in which the defendant was a participant. At the lineup, the defendant was identified as one of the persons responsible for the shooting on September 1, 1990. The defendant filed a motion to suppress the lineup identification, claiming that he was not represented by counsel at the lineup, thereby violating his sixth amendment right. *Garrett*, 179 Ill. 2d at 242. The trial court denied the defendant's motion to suppress.

On review, our supreme court held, "[A]dversarial judicial proceed-

ings had not begun at the time of the lineup[,] and, therefore, defendant had no sixth amendment right to counsel." *Garrett*, 179 Ill. 2d at 251. Our supreme court noted: "[A]t the time of the lineup there had been no formal charge, preliminary hearing, indictment, information, or arraignment. Further, during the filing of the complaint, the two hearings, defendant's detention, and the lineup, there was neither significant prosecutorial involvement nor a commitment by the State to prosecute." *Garrett*, 179 Ill. 2d at 251. Our supreme court found the State's role at the two hearings insufficient for the defendant's sixth amendment right to counsel to attach.

In the instant case, defendant had been served with a uniform traffic ticket on June 18, 1994, for driving under the influence of alcohol. This ticket was issued by Sprankle without any evidence of prosecutorial involvement. Defendant had not yet been charged with reckless homicide. There is no evidence in this case of any prosecutorial involvement prior to the time of the interview. Certainly, the prosecutorial involvement in *Garrett* was far more substantial than any prosecutorial involvement in the instant case. Accordingly, we believe that the trial court's finding that adversarial judicial proceedings had not yet begun at the time of the interview is not against the manifest weight of the evidence. In conclusion, we find no error in the trial court's decision to deny defendant's motion to suppress his statements made at the interview.

Wherefore, we affirm the judgment of the circuit court of St. Clair County.

Affirmed.

KUEHN and RARICK, JJ., concur.