[Cite as *S. Euclid v. Longino*, 2017-Ohio-7883.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104569**

# CITY OF SOUTH EUCLID

PLAINTIFF-APPELLEE

vs.

# KEVAN D. LONGINO

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
South Euclid Municipal Court
Case No. CRB 1400207

**BEFORE:**  E.T. Gallagher, J., Keough, A.J., and Stewart, J.

**RELEASED AND JOURNALIZED:**  September 28, 2017

**FOR APPELLANT**

Kevan D. Longino, pro se
4229 Stonehaven Road
South Euclid, Ohio 44121


**ATTORNEYS FOR APPELLEE**

Brian M. Fallon
South Euclid Law Director
P.O. Box 26267
Fairview Park, Ohio 44128

EILEEN T. GALLAGHER, J.:

**{¶1}** Defendant-appellant, Kevan Longino, pro se, appeals her passing bad checks conviction, rendered following a bench trial in the South Euclid Municipal Court. She raises four assignments of error:

> 1. The trial court erred in denying appellant's motion to dismiss based on the speedy trial statute pursuant to R.C. 2945.71, the Ohio constitution, and the Fifth and Fourteenth Amendments to the United States Constitution.
>
> 2. The trial court erred in finding that the appellant's speedy trial rights had been waived knowingly and voluntarily.
>
> 3. The trial court erred and abused its discretion by not properly informing the appellant of her constitutional rights and by allowing prosecutorial misconduct during trial.
>
> 4. The guilty verdict was legally insufficient and against the manifest weight of the evidence.

**{¶2}** We find no merit to the appeal and affirm.

## I.   Facts and Procedural History

**{¶3}** In January 2014, Longino presented a Western Union money order in the amount of $500 to her landlord, Robert Ross, as payment for rent, which was past due. Because Ross had already instituted eviction proceedings against Longino for failure to pay rent, he opted not to cash the check. However, the magistrate who presided over the eviction proceedings later advised Ross that he could cash the check to recover a portion of his awarded damages.

**{¶4}** When Ross subsequently attempted to cash the money order, it was returned as fraudulent. Consequently, in April 2014, Longino was charged with one count of passing bad checks, a first-degree misdemeanor, and a warrant was issued for her arrest. Almost two years later, in March 2016, Longino, who had neither been arrested nor arraigned, filed a motion to dismiss the complaint, claiming a violation of her right to a speedy trial. The trial court overruled the motion.

**{¶5}** Longino was subsequently arraigned and advised of the charge against her. The trial court also informed Longino of her right to counsel and to court-appointed counsel, if she met certain qualifying criteria. Longino never requested a court-appointed lawyer, nor did she request time to retain her own lawyer. Instead, Longino entered a not guilty plea and represented herself at a bench trial.

**{¶6}** Ross testified at trial and identified the Western Union money order in the amount of $500 that Longino presented to him for payment of rent. The money order, which was purportedly issued from Giant Eagle store number 440, was marked as "Exhibit A." Ross also identified a screenshot picture of his Huntington Bank online account dated April 8, 2014. The screenshot listed the recent transactions on the account including the deposit of the money order that was subsequently returned unpaid on April 11, 2014. Finally, Ross identified a letter he received from the branch manager of his local Huntington Bank branch, informing him that the money order had been returned as fraudulent. Ross further testified that he knew, based on his own 22-year career as a banker, that it was virtually impossible to stop payment on a money order. On

cross-examination, Ross explained that he learned the money order was fraudulent from three different sources (1) Western Union, (2) Huntington Bank, and (3) Giant Eagle.

{¶7} Tam Huling ("Huling"), a representative from Giant Eagle, testified that she works at Giant Eagle and is familiar with its money order program. Huling explained that although the money order marked as Exhibit A resembled Giant Eagle money orders, she could discern that it was not printed at Giant Eagle because it contained a stamp identifying the Giant Eagle store number 440. (Trial tr. 55.) Huling testified that money orders issued from Giant Eagle do not contain the store numbers and that the presence of the reference number "440" indicates that the money order marked as Exhibit A was "not a legitimate money order." (Trial tr. 57.) On cross-examination, Huling testified that the process of creating money orders is the same at every Giant Eagle store because Giant Eagle uses Western Union equipment to print all of its money orders.

{¶8} Finally, Officer Ken Patterson ("Patterson"), of the South Euclid Police Department, testified that the complaint came into his department and he took a statement from Ross regarding the fraudulent money order. Patterson also reviewed the screenshot of Ross's online account showing the deposit and the letter from Huntington Bank advising Ross that the money order was returned as fraudulent. As part of his investigation, Patterson took the money order to Giant Eagle where he compared it to a money order he purchased for $1.00. The money order Patterson purchased did not contain the number "440" that was printed on the money order Longino gave to Ross.

**{¶9}** Based on this evidence, the court found Longino guilty and sentenced her to 180 days in jail, 120 days suspended, 30 days in the county jail, and 30 days on home arrest. The court also imposed a fine of $650 with $100 suspended. Longino now appeals her conviction.

## II. Law and Analysis

### A. Speedy Trial

**{¶10}** In the first assignment of error, Longino argues her Sixth Amendment right to a speedy trial was violated because she was not brought to trial within three months of the warrant for her arrest "or summons." She contends that because the warrant was issued on April 23, 2014, she should have been brought to trial no later than July 22, 2014.

**{¶11}** The Ohio General Assembly codified the constitutional guarantee of a speedy trial in R.C. 2945.71. As relevant here, R.C. 2945.71(B)(2) provides that a person charged with a first-degree misdemeanor shall be brought to trial "[w]ithin ninety days after the person's arrest or the service of summons." Thus, the speedy trial time is not triggered by the issuance of an arrest warrant, but rather by the arrest itself. And although the speedy trial clock starts ticking upon the service of summons, Longino was not served with summons of the complaint until March 21, 2016, when she was processed on the warrant. Indeed, Longino admitted on the record that she never received a copy of the complaint before appearing in court. (Trial tr. 6.)

{¶12} Having been served with the complaint on March 21, 2016, Longino had to be brought to trial on or before June 19, 2016. Longino's trial commenced 50 days after the warrant was processed, on May 10, 2016. Therefore, Longino was brought to trial well within the 90-day speedy trial period.

{¶13} Longino further contends the city of South Euclid violated her right to a fair trial by failing to locate her and arrest her in a timely manner. Thus, she contends that South Euclid violated her right to due process, which provides limited protection against delays in prosecution. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 97-99, citing *United States v. Lovasco*, 431 U.S. 783, 789-790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

{¶14} However, unlike a Sixth Amendment speedy-trial claim, there is no presumption of prejudice that a defendant's right to due process was violated merely because a delay in prosecution exceeds a particular length of time. *State v. Del-Fierro*, 10th Dist. Franklin No. 15AP-1145, 2016-Ohio-5803, ¶ 9; *see also United States v. Schaffer*, 586 F.3d 414, 425 (6th Cir.2009).

{¶15} To establish that a delay in prosecution violated the Due Process Clause, a defendant must show (1) that the delay caused actual and substantial prejudice to her right to a fair trial, and (2) that the state delayed prosecution to gain a tactical advantage or slowed the process down for some other impermissible reason. *United States v. Gouveia*, 467 U.S. 180, 192, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984), citing *Lovasco* at

789; *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus.

{¶16} South Euclid served summons of the complaint on Longino's last known address, the address listed on the money order. Longino acknowledged on the record that she never received the summons because she moved from that location before the summons was served. Indeed, Longino argues that South Euclid should have known that she no longer lived at that address because the alleged victim, Ross, evicted her.

{¶17} However, when Longino moved out of Ross's property, she left no forwarding address. (Tr. 96, 102.) And Longino represented to the victim that her name was Danielle Longino as opposed to Kevan Longino. Locating someone who uses a false name is more difficult than finding one who uses her real name.

{¶18} Moreover, none of the witnesses were missing at the time of trial, the money order was still available, and Longino was not deprived of her liberty. Although Longino may have been surprised by the evidence presented at trial, any surprise resulted from her failure to conduct discovery, not the passage of time. Therefore, Longino failed to demonstrate that she was prejudiced by the approximate two-year lapse in time between the offense and prosecution.

{¶19} Accordingly, the first assignment of error is overruled.

## B. Waiver of Speedy Trial

{¶20} In the second assignment of error, Longino argues the trial court erred in finding that she knowingly, intelligently, and voluntarily waived her right to speedy trial.

However, as previously discussed, Longino was brought to trial well within the 90-day speedy trial period.

{¶21} Therefore, because there was no speedy trial violation, the second assignment of error is overruled as moot.

### C. Right to Counsel

{¶22} In the third assignment of error, Longino argues the trial court violated her right to counsel by failing to advise her of her right to counsel and of the consequences of proceeding without counsel.

{¶23} The Sixth and Fourteenth Amendments to the United States Constitution guarantee that persons brought to trial in any state or federal court must be afforded the right to the assistance of counsel before they may be validly convicted and punished by imprisonment. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). However, a defendant may forgo that right. Indeed, the Sixth Amendment also guarantees a criminal defendant the right to self-representation. *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus.

{¶24} When defendants waive their right to counsel, they relinquish many of the traditional benefits associated with representation by counsel. *Faretta v. California,* 422 U.S. 806, 821, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Therefore, a defendant may only defend himself without counsel "when he voluntarily, and knowingly and intelligently elects to do so." *Gibson* at paragraph one of the syllabus.

**{¶25}** To establish an effective waiver of the right to counsel, the trial court must make a sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right. *Garfield Hts. v. Williams*, 8th Dist. Cuyahoga No. 102279, 2016-Ohio-381, ¶ 11.

**{¶26}** The trial court informed Longino of her right to counsel in open court and on the record during her arraignment. The transcript from the arraignment states, in relevant part:

> You have a Constitutional right to be represented by an attorney, also known as a lawyer or counselor, if you want to have one.
>
> *    *    *
>
> You also have a right to a court appointed attorney who will help you and cost you nothing, but you must meet two criteria.

(Arraignment tr. 2-3.)

**{¶27}** The court also explained the criteria required to be eligible for court-appointed counsel and advised Longino of her constitutional rights in accordance with Crim.R. 11. Moreover, Longino executed a "Statement of Rights" form, which states, in relevant part:

> I hereby state that I have been informed by the court and understand:
>
> 1.   The nature of the charges against me.
>
> *    *    *
>
> 3.   My right to retain counsel even if I intend to plead guilty and of my right to a reasonable continuance to secure counsel;

4.    My right to have counsel assigned to me without cost if I am unable to employ counsel even though I intend to plead guilty and of my right to a reasonable continuance.

{¶28} Below the list of rights, Longino checked a box indicating her intent to plead not guilty and signed the form.   Below her signature, Longino signed the form a second time in a separate space, which states: "I waive my right to an attorney." Therefore, her claim that she was not advised of her right to counsel is not supported by the record.

{¶29} Additionally, Longino filed two pro se motions to dismiss and a pro se motion for a continuance, but never filed a motion to retain counsel or for court-appointed counsel.   Indeed, Longino admitted at sentencing that she did not think she would have to go trial because her mother, a lawyer who formerly practiced, drafted the motions for her, and she thought they would be granted.   (Trial tr. 120.)   The transcript states, in relevant part:

THE COURT: You elected to represent you.

THE DEFENDANT: Yes.

THE COURT: * * * And so whether or not you are attuned to the nuances of practicing falls to you, ma'am.   That's not anyone else's responsibility.

THE DEFENDANT: I know.

THE COURT: And so if you fail to subpoena witnesses or demand discovery or whatever, that is because of your election.

THE DEFENDANT: It was my fault because I didn't know — the reason I — \* \* \* I obviously didn't think that I was going to have to go trial, ma'am.

THE COURT: Okay.

THE DEFENDANT: I thought my motions were going to be ruled on in my favor because I felt like —

THE COURT: Because you felt like you had written them well enough, your mom had helped you and you had enough of a skill set that would get you through.

THE DEFENDANT: Yes, ma'am, I did.

(Trial tr. 120-121.)

{¶30} Thus, Longino admitted that she did not think counsel would be necessary. Under these circumstances, we find her claim that she did not understand the waiver of her right to counsel lacks credibility.

{¶31} Longino also argues the trial court allowed the prosecutor to ambush her by not providing her with discovery. However, Longino had the right to request discovery, but failed to avail herself of that right. Her own failure to request discovery cannot be later characterized as prosecutorial misconduct. It was as she said, "her own fault." (Tr. 121.)

{¶32} The third assignment of error is overruled.

### D. Sufficiency and Manifest Weight of the Evidence

{¶33} In the fourth assignment of error, Longino argues her passing bad checks conviction is not supported by sufficient evidence and is against the manifest weight of the evidence.

**{¶34}** Although the terms "sufficiency" and "weight" of the evidence are "quantitatively and qualitatively different," we address these issues together because they are closely related, while applying the distinct standards of review. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

**{¶35}** The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶36}** In contrast to sufficiency, "weight of the evidence involves the inclination of the greater amount of credible evidence." *Thompkins* at 387. While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *Id*. The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the

conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶37} Longino was convicted of passing bad checks, in violation of R.C. 2913.11(B), which states that "[n]o person with purpose to defraud, shall issue or transfer or cause to be issued or transferred a check or other negotiable instrument, knowing that it will be dishonored or knowing that a person has ordered or will order stop payment on the check or other negotiable instrument."

{¶38} Longino contends that because a money order is not a check under the Uniform Commercial Code, she could not be convicted of passing bad checks. However, the Uniform Commercial Code is not the law in Ohio. R.C. 2913.11(A)(1) defines the term "check" as including

> any form of debit from a demand deposit account, including, but not limited to any of the following:
>
> (a) A check, bill of exchange, draft, order of withdrawal, or similar negotiable or non-negotiable instrument;
>
> (b) An electronic check, electronic transaction, debit card transaction, check card transaction, substitute check, web check, or any form of automated clearing house transaction.

{¶39} Black's Law Dictionary defines the term "money order" as "[a] negotiable draft issued by an authority entity (such as a bank, telegraph company, post office, etc.) to a purchaser, in lieu of a check, to be used to pay a debt." *Black's Law Dictionary* 1159 (10th Ed.2014). The Black's Law Dictionary definition is consistent with the definition set forth in R.C. 2913.11(A)(1), which defines a check, in part, as a "draft." Indeed, this

court has held that a "money order" is a "check" under the Ohio Revised Code. *State v. Rygelski*, 8th Dist. Cuyahoga Nos. 54559 and 54558, 1988 Ohio App. LEXIS 4511 (Nov. 17, 1988). *See also State v. Wilson*, 12th Dist. Clermont No. CA2006-09-068, 2007-Ohio-5187. Therefore, a money order falls within the definition of a check under R.C. 2913.11(A).

{¶40} Furthermore, Ross testified that the money order he received from Longino was returned unpaid, as fraudulent. A Giant Eagle employee familiar with the money order program testified that the money order was not legitimate because it contained a store number that Giant Eagle employees never print on money orders. Although no witness testified that Longino forged the money order, circumstantial evidence demonstrated that Longino gave her landlord a check for rent that she knew would be dishonored. Therefore, Longino's passing bad checks conviction was supported by sufficient evidence and by the manifest weight of the evidence.

{¶41} The fourth assignment of error is overruled.

### III.   Conclusion

{¶42} Longino was brought to trial within the speedy trial period because the speedy trial time started running when Longino was processed on the warrant rather than the issuance of the warrant. The trial court also properly advised  Longino of her right to counsel and court-appointed counsel during her arraignment. Therefore, there was no violation of Longino's right to counsel.

**{¶43}** And, because a money order is a "check" for purposes of R.C. 2913.11(B), Longino's conviction was supported by sufficient evidence and by the manifest weight of the evidence.

**{¶44}** The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the South Euclid Municipal court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
MELODY J. STEWART, J., CONCUR